## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **CHERYL LAURIE,** | ) | |
|  | ) | |
| **Plaintiff,** | ) | |
|  | ) | |
| **v.** | ) | **Civil Action No. 13-10962-DJC** |
|  | ) | |
| **MEGAN J. BRENNAN,** | ) | |
| **POSTMASTER GENERAL, and** | ) | |
| **UNITED STATES POSTAL SERVICE,** | ) | |
|  | ) | |
| **Defendants.** | ) | |
|  | ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                **July 24, 2015**

### I.      Introduction

Plaintiff Cheryl Laurie ("Laurie") has filed this lawsuit against Defendants Megan J. Brennan,[1] Postmaster General of the United States Postal Services, and the United States Postal Service, Northeast Area Agency (collectively, the "Defendants") alleging harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

---

[1] Defendant Megan J. Brennan has been automatically substituted as a party in place of Patrick R. Donahoe pursuant to Fed. R. Civ. P. 25(d).

D. 1.  Defendants have moved for summary judgment.  D. 24.  For the reasons stated below, the Court ALLOWS the motion.

## II.     Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law."  Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)).  The movant bears the burden of demonstrating the absence of a genuine issue of material fact.  Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986).  If the movant meets its burden, the non-moving party may not rest on the allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor."  Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010).  "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'"  Id. (quoting Anderson, 477 U.S. at 249) (alteration in original).  The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III.    Factual Background

Unless otherwise indicated, the following facts are as described in Defendants' statement of material facts, D. 25 at 2-5.  Laurie did not file a statement of material facts or respond to

Defendants' statement of material facts.[2]

Laurie was employed as a mail processing clerk at the USPS' Brockton, Massachusetts Post Office before being terminated on December 7, 2009.  D. 25-2 at 2; see also D. 25 ¶ 24. Prior to the events leading to this action, Laurie filed three Equal Employment Opportunity ("EEO") complaints against the post office:  one dated May 10, 2002, a second dated September 25, 2003 and the last dated June 26, 2009.  D. 25 ¶ 1.  When she filed these prior EEO complaints, Laurie was working the "Tour Three (late afternoon shift)" at the post office.  Id. ¶ 2. At the time of the events giving rise to this action, however, Laurie was working "Tour One" and none of her supervisors had been named as discriminating officials in the prior actions.  Id.  Her Tour One supervisors at the post office were Alan Kesack ("Kesack") and Kevin W. Turner ("Turner").  Id. ¶¶ 3, 5.  Kesack and Turner deny knowing about Laurie's prior EEO activity before her December 2009 termination.  Id.

### A.      Laurie's Allegations of a Retaliatory and Hostile Work Environment

On November 8, 2009, Turner gave all employees with a 20:50 start time on Tour One verbal break schedules to facilitate coverage of breaks and lunches.  Id. ¶¶ 6, 7.  Laurie contends that she was singled out as the only employee given a schedule with specific break times.  D. 25-1 at 1.  Then, on November 11, 2009, while Laurie was training for a new position as an

---

[2] Accordingly, the Court takes as admitted the undisputed facts presented in Defendants' statement of material facts.  Stonkus v. City of Brockton Sch. Dep't, 322 F.3d 97, 102 (1st Cir. 2003) (quoting D. Mass. L.R. 56.1) (providing that "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by the opposing parties unless controverted by the statement required to be served by opposing parties").

Automation Clerk, Kesack allegedly told Plaintiff that she was "not gonna last on Tour 1," and walked away.  D. 25 ¶¶ 8-9.[3]

Later that month, at a Pre-Disciplinary Interview on November 17, 2009, Turner asked Laurie about the nature of her absences and whether she was using prescription medications.  Id. ¶¶ 10-13; see also D. 25-1 at 25-26.  The question regarding prescription medication was one of several questions on the Pre-Disciplinary Interview form used by the Brockton Plant to determine whether employee absences are Family and Medical Leave Act ("FMLA") related.  D. 25 ¶¶ 11, 12; D. 25-1 at 25-26.

On December 2, 2009, as Laurie was "punching in from lunch" she was informed that Kesack had been paging her and wanted to see her in his office.  D. 25 ¶ 14.  Kesack explained that he had been looking for her and accused her of being "AWOL."  Id. ¶ 15.  Kesack did not, however, formally record Laurie as being AWOL in her employee record.  Id. ¶ 16.  The next day, on December 3, 2009, Kesack found Laurie away from her desk again.  Id. ¶¶ 18, 19.  After confirming that she was not on her lunch break, but had just stepped out "for some air," he informed her that, moving forward, she had to ask permission before leaving her work area.  Id. ¶¶ 18-21.  Laurie contends that during this conversation Kesack called her a liar "four times."  D. 26 at 4.[4]

Tuner subsequently issued a "Notice of Removal" to Laurie on December 7, 2009.  D. 25 ¶ 24.  The notice cited twenty instances between September 17, 2009 and November 11, 2009 when Laurie either had been late or had used unscheduled leave.  Id.  The notice also referenced

---

[3] Kesack denies the statement, but the Defendants deem it admitted only for the purposes of this motion.  D. 25 ¶ 3.

[4] Kesack disputes that he called Laurie a liar, but for the purpose of this motion alone, it is admitted.

prior disciplinary actions taken against Laurie, including two prior 2009 suspensions for failure to be in regular attendance.  <u>Id.</u> ¶ 25.  The "Notice of Removal" was thereafter arbitrated pursuant to a collective bargaining agreement and an administrative judge determined that postal management had just cause to terminate Laurie's employment.  <u>Id.</u> ¶ 27.

## IV.    Procedural History

Laurie instituted this action on April 16, 2013.  D. 1.  Defendants have now moved for summary judgment.  D. 24.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 27.

## V.    Discussion

### A.    Laurie Has Not Demonstrated a Genuine Issue of Material Fact as to Her Retaliation Claim

To evaluate a retaliation claim under Title VII, the Court must apply the familiar burden-shifting analysis set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  Under this framework, the burden falls initially to Laurie to set forth a *prima facie* case of retaliation. <u>McDonnell Douglas</u>, 411 U.S. at 802.  If Laurie establishes a *prima facie* case, the burden shifts to her employer "to proffer a legitimate, non-retaliatory reason for [its] employment decisions." <u>Alvarado v. Donahoe</u>, 687 F.3d 453, 458 (1st Cir. 2012) (quoting <u>Roman v. Potter</u>, 604 F.3d 34, 39 (1st Cir. 2010) (internal quotation marks omitted)).   If the employer can provide such a legitimate reason, Laurie must demonstrate that her "employer's stated reasons are pretextual and proffered to disguise retaliatory animus."   <u>Alvarado</u>, 687 F.3d at 458; <u>see also</u> <u>Fisher v. Town of Orange</u>, 964 F. Supp. 2d 103, 111 (D. Mass. 2013).

To demonstrate a *prima facie* case of retaliation, Laurie must show that:  (1) she engaged in protected conduct; (2) that she suffered an adverse employment action; and (3) that a causal nexus exists between the protected activity and the adverse action.  <u>Ponte v. Steelcase Inc.</u>, 741

F.3d 310, 321 (1st Cir. 2014) (citation omitted).  Laurie must also establish that "her protected activity was a but-for cause of the alleged adverse action by the employer."  <u>Univ. of Tex. Sw. Med. Ctr. v. Nassar</u>, ___ U.S. ___, 133 S. Ct. 2517, 2534 (2013).  As such, Laurie must "show that the retaliator knew about her protected activity—after all, one cannot have been motivated to retaliate by something he was unaware of."  <u>Medina-Rivera v. MVM, Inc.</u>, 713 F.3d 132, 139 (1st Cir. 2013).

Here, there is no dispute that Laurie engaged in protected conduct and that she suffered an adverse employment action.  The Court agrees with Defendants, however, that, on this record, a reasonable factfinder could not find there was a causal nexus between Laurie's prior EEO activity in 2002, 2003 and June 2009 and her termination in December 2009.  To begin, there is no evidence in the record to support the claim that Kesack and Turner knew about Laurie's prior EEO activity.  Laurie argues generally that "Defendant's statements made to Plaintiff clearly show he had knowledge of EEO activity," D. 26 at 3, and further argues that one of the Defendants (presumably Kesack, <u>see</u> D. 25-1 at 5-6) told her that they "had a history" even though Laurie had only been on the job three weeks.  D. 26 at 3.  Laurie infers from this alleged exchange that the Defendants must have been aware of her prior EEO activity.  <u>Id.</u>  These allegations, standing alone, are insufficient, however, to establish that either Turner or Kesack knew of Laurie's prior activity, which took place while Laurie was working under different supervisors and on a different shift.  Turner and Kesack were not named in Laurie's prior EEO actions and Laurie does not offer any specific admissible facts to suggest that either Turner or Kesack knew of her prior EEO complaints.

In Laurie's opposition to Defendants' motion for summary judgment, she seems to suggest, for the first time, that the protected activity she relies on here is not the prior EEO

complaints, but rather the EEO complaint related to the instant action.  D. 26 at 3-4 (stating that her "[c]omplaint was filed Dec. 3, 2009" and that "[o]n December 7, four days later, [Laurie] was terminated").  The timing of Laurie's most recent EEO complaint is not entirely clear from the record.  For example, the agency decision denying Laurie's complaint states that Laurie "sought EEO counseling on December 23, 2009" and "filed her formal complaint on January 27, 2010," D. 25-2 at 2, while the EEO Investigation Report indicates that the complaint was filed on January 20, 2010, D. 25-1 at 1, and a handwritten complaint, included in the "Counselor's Report," is dated December 5, 2009 and is stamped as received on December 17, 2009, id. at 3-7. Nevertheless, the record at least suggests that Laurie did not file the EEO complaint naming Turner and Kesack until after she was terminated and, therefore, would not serve as the basis for Laurie's retaliation claim.  Pearson v. Massachusetts Bay Transp. Auth., 723 F.3d 36, 42 (1st Cir. 2013) (noting that "[c]ausation moves forward, not backwards, and no protected conduct after an adverse employment action can serve as the predicate for a retaliation claim").

More importantly, as with the prior EEO activity, Laurie has not offered any evidence to suggest that either Turner or Kesack were aware of her most recent protected activity either. Laurie perhaps means to suggest that it is the alleged temporal proximity between her most recent complaint and her termination that establishes causation.[5]  D. 26 at 4; see Wright v. CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003) (noting that "chronological proximity does not by itself establish causality, particularly if '[t]he larger picture undercuts any claim of causation'" (quotation omitted) (alteration in original)).  Even assuming Laurie had sufficiently established that Turner or Kesack were aware of her protected activity, however, "knowledge

---

[5] Because Laurie is proceeding *pro se*, her pleadings are construed liberally.  See, e.g., Haines v. Kerner, 404 U.S. 519, 520 (1972); Prou v. United States, 199 F.3d 37, 42 (1st Cir. 1999).

alone cannot provide the causal link." <u>Pearson</u>, 723 F.3d at 42. "Were the rule otherwise, then a disgruntled employee, no matter how poor his performance or how contemptuous his attitude toward his supervisors, could effectively inhibit a well-deserved discharge by merely filing, or threatening to file, a discrimination complaint." <u>Id.</u> (quoting <u>Mesnick v. Gen. Elec. Co.</u>, 950 F.2d 816, 828 (1st Cir. 1991)).

Laurie offers two "witness statements" to support a causal link between her protected activity and the adverse action. D. 26-1 at 7-8. The first statement provides generally that management was "unfair" to Laurie and that she was singled out "by the minute" when it came to leaving early or coming in late. <u>Id.</u> at 7. The statement further provides that someone in management "without naming names . . . told me they would get her." <u>Id.</u> The second proffered witness statement provides that the supervisors kept "an eye on her for her breaks like smoke breaks, bathroom, move on job to another" and that supervisors from her previous shift had told her new supervisors to "watch her." <u>Id.</u> at 8. While it is clear from the record, and confirmed by Laurie's witness statements, that Laurie's supervisors were monitoring her absences closely, there is no other evidence cited to suggest that her supervisors' treatment was anything more that regular supervision and discipline. The record demonstrates that several other employees were given schedules with specific break times, D. 25-1 at 14, and that three other employees with attendance problems were also issued notices of removal or suspension by Turner, <u>id.</u> at 35-47. In fact, the other disciplined employees appear to have had fewer absences that Laurie. <u>See</u> <u>id.</u>

Even assuming that Laurie had established a *prima facie* case of retaliation, however, Defendants have met their burden to offer a "legitimate, non-retaliatory" reason for the termination. <u>Alvarado</u>, 687 F.3d at 458 (citation omitted). Defendants repeatedly approached Laurie regarding her tardiness and attendance problems. Laurie had received seven-day and

fourteen-day suspensions previously for "[f]ailure to be in regular attendance," D. 25 ¶ 25, and Laurie's notice of removal cited twenty instances between only September 17, 2009 and November 11, 2009 when Laurie had been late or absent, id. ¶ 24. Further, on November 17, 2009, when Laurie was interviewed by Turner in a pre-disciplinary proceeding, Laurie was asked directly if there were any extenuating circumstances that prevented her from being in regular attendance. D. 25-1 at 25. Laurie answered only "this place makes me sick." Id.

As such, the Court concludes that Defendants' have proffered a legitimate, non-retaliatory reason for Laurie's termination, and therefore, the final burden rests with Laurie to show that this reason was pretext. Alvarado, 687 F.3d at 458 (citation omitted). She has not met this burden. Laurie points to no admissible evidence, or reasonable inference from same, that Defendants' reason for disciplining and, ultimately, terminating Laurie was a "sham" intended to cover up the employer's true motive. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991); see also Sánchez-Rodríguez v. AT & T Mobility Puerto Rico, Inc., 673 F.3d 1, 15 (1st Cir. 2012) (noting that "[t]o defeat summary judgment in a retaliation case, 'a plaintiff must point to some evidence of retaliation by a pertinent decisionmaker'" (emphasis omitted)) (quoting Randlett v. Shalala, 118 F.3d 857, 862 (1st Cir. 1997)); Acevedo–Parrilla v. Novartis Ex–Lax, Inc., 696 F.3d 128, 140 (1st Cir. 2012) (noting that to defeat summary judgment, "[a plaintiff] must offer some minimally sufficient evidence, direct or indirect, both of pretext and of [the defendants'] discriminatory animus" (emphasis and citation omitted)).

For the reasons articulated above, the Court concludes that even "after assessing all of the evidence on the record in the light most favorable to" Laurie, Acevedo-Parrilla, 696 F.3d at 140, she has not proffered specific facts that would enable a reasonable factfinder to conclude that Defendants' retaliated against her for engaging in protected activity.

**B.      Laurie Has Not Demonstrated a Genuine Issue of Material Fact as to Her Hostile Work Environment Claim**

It is a violation of Title VII to require an employee "to work in a discriminatorily hostile or abusive environment." <u>Fisher</u>, 964 F. Supp. 2d at 114 (quoting <u>Valentin–Almeyda v. Municipality of Aguadilla</u>, 447 F.3d 85, 94 (1st Cir. 2006)).   To establish a hostile work environment claim, Laurie must show:  (1) that she is a member of a protected class; (2) that she was subjected to unwelcome harassment; (3) that the harassment was based her membership to a protected class; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that the conduct was both objectively and subjectively offensive; and (6) that some basis for employer liability has been established.  <u>Ponte</u>, 741 F.3d at 319-20 (citation omitted); <u>Fisher</u>, 964 F. Supp. 2d at 114 (citation omitted).

As a threshold matter, Laurie has not presented any evidence to establish that any alleged mistreatment or harassment was linked to her protected status.  In brief, Laurie grounds her hostile work environment claim in six instances, when: (1) she was given a schedule with specific break times, D. 25-1 at 1; (2) her supervisor allegedly told her that she was not going to last on her current shift assignment, D. 25 ¶¶ 8-9; (3) she was asked by a supervisor if she was taking prescription medication, <u>id.</u> ¶ 10; (4) her supervisor accused her of being away from her post without leave, <u>id.</u> ¶ 15; (5) she was told to ask permission to take breaks and allegedly called a liar, <u>id.</u> ¶ 18-23; and (6) she was given a notice of removal for failure to be in regular attendance, <u>id.</u> ¶ 24, 25.  None of these circumstances raise a clear inference of retaliatory (or discriminatory) animus.

Moreover, to prevail on a hostile work environment claim Laurie must show "that she was subjected to severe or pervasive harassment" that was "objectively and subjectively

offensive." Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir. 2005) (citation omitted). "The anti-discrimination laws were not enacted to create or enforce a general civility code," and "rudeness or ostracism, standing alone, usually is not enough to support a hostile work environment claim." Id. (noting that in deciding a hostile work environment claim "a court must mull the totality of the circumstances, including factors such as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance" (internal citations and quotation marks omitted)). Here, Laurie may well have found these complained of incidents subjectively offensive. She has, however, failed to show how, given the totality of the circumstances on this undisputed record amount to an objectively offensive conduct, particularly where Laurie had received multiple warnings from her employers for her continued absences.

Accordingly, the Court concludes that summary judgment for the Defendants is also warranted on Laurie's hostile work environment claim.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion for summary judgment, D. 24.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge